IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DR. MARK A. BARRY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No.: |
| | : | |
| SEASPINE HOLDINGS CORP., SEASPINE | : | |
| ORTHOPEDICS CORP., AND SEASPINE, | : | JURY TRIAL DEMANDED |
| INC. | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT FOR PATENT INFRINGEMENT

1.      Plaintiff Dr. Mark A. Barry ("Dr. Barry"), through his undersigned counsel,

hereby alleges as follows:

## I.      THE PARTIES

2.      Dr. Barry is an orthopedic surgeon who resides in San Diego, California.  Dr.

Barry is sole owner of United States Patent Nos. 7,670,358 ("the '358 patent"); 8,361,121 ("the

'121 patent"); 9,339,301 ("the '301 patent"); 9,668,787 ("the '787 patent"); and 9,668,788 ("the

'788 patent") (collectively, the "Asserted Patents").

3.       On information and belief, Defendant SeaSpine Holdings Corp. is a corporation

organized and existing under the laws of the state of Delaware, with a registered agent

Corporation Service Company at 251 Little Falls Drive, Wilmington, DE 19808.

4.       On information and belief, Defendant SeaSpine Orthopedics Corp. is a

corporation organized and existing under the laws of the state of Delaware, with a registered

agent Corporation Service Company at 251 Little Falls Drive, Wilmington, DE 19808.

5.       On information and belief, Defendant SeaSpine, Inc. (collectively, with SeaSpine

Holdings Corp. and SeaSpine Orthopedics Corp., "SeaSpine") is a corporation organized and

existing under the laws of the state of Delaware, with a registered agent Corporation Service Company at 251 Little Falls Drive, Wilmington, DE 19808.

## II.     JURISDICTION AND VENUE

6.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*  The Court has subject matter jurisdiction pursuant to 35 U.S.C. §§ 1331 and 1338(a).

7.      The Court has personal jurisdiction over Defendant SeaSpine Holdings Corp. because it is incorporated in Delaware and thus resides within this judicial district.

8.      The Court has personal jurisdiction over Defendant SeaSpine Orthopedics Corp. because it is incorporated in Delaware and thus resides within this judicial district.

9.      The Court has personal jurisdiction over Defendant SeaSpine, Inc. because it is incorporated in Delaware and thus resides within this judicial district.

10.      Venue is proper pursuant to 28 U.S.C. § 1400(b) because Defendant SeaSpine Holdings Corp.  is incorporated in Delaware and thus resides in this judicial district.

11.      Venue is proper pursuant to 28 U.S.C. § 1400(b) because Defendant SeaSpine Orthopedics Corp. is incorporated in Delaware and thus resides in this judicial district.

12.      Venue is proper pursuant to 28 U.S.C. § 1400(b) because Defendant SeaSpine, Inc. is incorporated in Delaware and thus resides in this judicial district.

## III.     THE '358 PATENT

13.      On March 2, 2010, the United States Patent and Trademark Office issued the '358 patent, entitled SYSTEM AND METHOD FOR ALIGNING VERTEBRAE IN THE AMELIORATION OF ABERRANT SPINAL COLUMN DEVIATION CONDITIONS. (Copy Attached as Exhibit A.)

14.     Dr. Barry is the owner of all right, title, and interest in the '358 patent, including the right to sue, enforce, and recover damages for all infringements.

15.     The '358 patent has not expired and is in full force and effect.

16.     Pursuant to 35 U.S.C. § 282, the '358 patent and each of its claims are presumed valid and enforceable.

17.     The '358 patent contains claims, for example claims 4 and 5, directed to a method of derotating vertebrae via the simultaneous application of force to linked engagement members attached to implanted pedicle screws.

## IV.     THE '121 PATENT

18.     On January 29, 2013, the United States Patent and Trademark Office issued the '121 patent, entitled SYSTEM AND METHOD FOR ALIGNING VERTEBRAE IN THE AMELIORATION OF ABERRANT SPINAL COLUMN DEVIATION CONDITIONS. (Copy Attached as Exhibit B.)

19.     Dr. Barry is the owner of all right, title, and interest in the '121 patent, including the right to sue, enforce, and recover damages for all infringements.

20.     The '121 patent has not expired and is in full force and effect.

21.     Pursuant to 35 U.S.C. § 282, the '121 patent and each of its claims are presumed valid and enforceable.

22.     The '121 patent contains claims, for example claims 2, 3, and 4, directed to a system used in derotating vertebrae via the simultaneous application of force to linked engagement members attached to implanted pedicle screws.

## V.     THE '301 PATENT

23.     On May 17, 2016, the United States Patent and Trademark Office issued the '301 patent, entitled SYSTEM AND METHOD FOR ALIGNING VERTEBRAE IN THE

AMELIORATION OF ABERRANT SPINAL COLUMN DEVIATION CONDITIONS. (Copy Attached as Exhibit C.)

24.     Dr. Barry is the owner of all right, title, and interest in the '301 patent, including the right to sue, enforce, and recover damages for all infringements.

25.     The '301 patent has not expired and is in full force and effect.

26.     Pursuant to 35 U.S.C. § 282, the '301 patent and each of its claims are presumed valid and enforceable.

27.     The '301 patent contains claims, for example claims 1-10, directed to both a system for use in, as well as the method for, derotating vertebrae via the simultaneous application of force to linked engagement members attached to implanted pedicle screws.

## VI.     THE '787 PATENT

28.     On June 6, 2017, the United States Patent and Trademark Office issued the '787 patent, entitled SYSTEM AND METHOD FOR ALIGNING VERTEBRAE IN THE AMELIORATION OF ABERRANT SPINAL COLUMN DEVIATION CONDITIONS. (Copy Attached as Exhibit D.)

29.     Dr. Barry is the owner of all right, title, and interest in the '787 patent, including the right to sue, enforce, and recover damages for all infringements.

30.     The '787 patent has not expired and is in full force and effect.

31.     Pursuant to 35 U.S.C. § 282, the '787 patent and each of its claims are presumed valid and enforceable.

32.     The '787 patent contains claims, for example claims 1-9, directed to a method for derotating vertebrae via the simultaneous application of force to linked elongated levers attached to implanted pedicle screws.

## VII.   THE '788 PATENT

33.     On June 6, 2017, the United States Patent and Trademark Office issued the '788 patent, entitled SYSTEM AND METHOD FOR ALIGNING VERTEBRAE IN THE AMELIORATION OF ABERRANT SPINAL COLUMN DEVIATION CONDITIONS. (Copy Attached as Exhibit E.)

34.     Dr. Barry is the owner of all right, title, and interest in the '788 patent, including the right to sue, enforce, and recover damages for all infringements.

35.     The '788 patent has not expired and is in full force and effect.

36.     Pursuant to 35 U.S.C. § 282, the '788 patent and each of its claims are presumed valid and enforceable.

37.     The '788 patent contains claims, for example claims 1-6, directed to a system for use in derotating vertebrae via the simultaneous application of force to linked elongated levers attached to implanted pedicle screws.

## VIII.  KNOWLEDGE OF DR. BARRY'S PATENTS AND PATENT RIGHTS

38.     SeaSpine manufacturers medical devices and competes in the relevant area of spinal correction with various companies.

39.     Given the competitive landscape in which SeaSpine operates, on information and belief, SeaSpine has monitored not only the products and techniques offered by its competitors, but also the intellectual property and licenses competitors have reached regarding third-party intellectual property rights.

40.     As stated on the face of the '358 patent, Dr. Barry's earliest patent at issue in this Complaint and the parent to the other Asserted Patents, Dr. Barry's '358 patent published in 2006.  Dr. Barry's patent rights were licensed by what is now known as Zimmer Biomet ("Biomet"), which initially commercialized Dr. Barry's invention and provides a licensed

product called the Trivium Derotation System.  Upon information and belief, SeaSpine has

known of Dr. Barry, his inventions, and his Asserted Patents for years.  Upon further information

and belief, SeaSpine, through its efforts to keep appraised of its industry and/or the intellectual

property associated with its industry, has known of the Asserted Patents as each was issued by

the United States Patent and Trademark Office.

41.     In 2014, Dr. Barry sued SeaSpine's competitor, Medtronic, Inc. ("Medtronic"), in

the Eastern District of Texas (Civil Action No. 1:14-cv-104) ("Medtronic Case") for

infringement of two of the Asserted Patents at issue in this case: the '358 and '121 patents.

These patents are the parent patents to the remaining Asserted Patents in this Complaint.

42.     Dr. Barry asserted that Medtronic induced surgeons to infringe the '358 and '121

patents through their use of Medtronic's Vertebral Column Manipulation ("VCM") system.

Dr. Barry ultimately prevailed at trial.  The jury found Medtronic liable for willful infringement

and that both patents were not invalid.  The court found against Medtronic on its inequitable

conduct defense.  Medtronic lost its appeal to the United States Court of Appeals for the Federal

Circuit, and the United States Supreme Court denied Medtronic's petition for a writ of certiorari.

43.     Medtronic filed several unsuccessful petitions for *inter partes* review of the '358

patent and '121 patent.  SeaSpine knows of this fact.

44.     While the Medtronic case was on appeal, in 2017 Dr. Barry sued two additional

SeaSpine competitors—Globus Medical, Inc. ("Globus") and various DePuy entities[1]—accusing

them of inducing infringement of all Asserted Patents.  Dr. Barry brought these actions in the

United States District Court for the Eastern District of Pennsylvania (Civil Action Nos. 2:17-cv-

---

[1] The DePuy defendants consist of DePuy Synthes Products, Inc., Medical Device Business Services, Inc., and
DePuy Synthes Sales, Inc. (d/b/a DePuy Synthes Spine).

02998 ("Globus Case") and 2:17-cv-03003 ("DePuy Case")).  The Globus Case settled and was dismissed with prejudice on August 29, 2019.  The DePuy Case is still pending.

45.     Upon information and belief, SeaSpine was aware of the Medtronic Case since the inception of that suit.  At the very least, SeaSpine would have learned of Dr. Barry and his '358 and '121 patents no later than January 27, 2016, when Dr. Barry served SeaSpine, Inc. with subpoenas in relation to the Medtronic Case.

46.     SeaSpine was aware of the '301 patent, '787 patent, and '788 patent at least by or around August 28, 2017, when Dr. Barry sent Integra LifeSciences, which spun-off SeaSpine, a letter regarding infringement of the Asserted Patents.

47.     Upon information and belief, SeaSpine has been aware of Medtronic's VCM system since that product was released on the market.  SeaSpine knows that Medtronic was found to willfully infringe the '358 and '121 patents through Medtronic's inducement of surgeons to use the VCM system.

48.     Likewise, upon information and belief, SeaSpine has been aware of Biomet's Trivium Derotation System since that product was released on the market.

49.     In light of all of the indications of the patented methods and systems that SeaSpine's products implemented, SeaSpine should have been compelled to conduct a patent search that would identify Dr. Barry's patent rights.  To the extent SeaSpine did not do so, such conduct was intentional, or at the very least, SeaSpine was willfully blind to Dr. Barry's patent rights.

50.     Based on these facts, SeaSpine has either affirmatively known of Dr. Barry's intellectual property covering the equipment and techniques associated with the SeaSpine

Products as described herein, or at the very least, been willfully blind to the existence of that intellectual property and its relation to the SeaSpine Products as described herein.

## IX.    SEASPINE PRODUCTS

51.    The term "SeaSpine Products" as used herein refers to the Daytona™ Deformity System, the Daytona® Small Stature Spinal System, and any other SeaSpine instruments manufactured, sold, distributed, loaned, consigned, or otherwise used to derotate *en bloc* multiple levels of vertebrae.

52.    Upon information and belief, the SeaSpine Products were designed to compete in the market with products such as Medtronic's VCM kit and Biomet's Trivium Derotation System.

53.    SeaSpine has manufactured, sold, distributed, loaned, consigned, or otherwise made available vertebral derotation instruments under the name Daytona™ Deformity System.

54.    The following image of the Daytona™ Deformity System shows several constructs including six-to-eight tubes or levers attached to six-to-eight pedicle screws and connected via clips along the length of the spine as well as transversely across the spine.  The following image comes from the Daytona™ Deformity System Surgical Technique Guide, which is attached hereto as Exhibit F, at 11.  Upon information and belief, surgeons have built such constructs using the Daytona™ Deformity System and thereafter performed derotation maneuvers, consistent with SeaSpine's teaching, encouragement, and instruction.



55.    SeaSpine acknowledges that its "Daytona™ Deformity System … is designed to address standard to complex deformity cases patients" and can be used to perform segmental as well as *en bloc* vertebral body derotation maneuvers."  *See* Exhibit F (Daytona™ Deformity System Surgical Technique Guide) at 1, 10-11.

56.    According to the Daytona™ Deformity System Surgical Technique Guide, the Daytona™ Deformity System can be used with the Daytona and/or Malibu™ line of implantable products.  *See* Exhibit F (Daytona™ Deformity System Surgical Technique Guide) at 1, 18.

57.    In addition to the Daytona™ Deformity System Surgical Technique Guide, SeaSpine provides a detailed video inducing surgeons to infringe Dr. Barry's Asserted Patents: https://www.youtube.com/watch?v=CmKfLahU-NA.  The video shows such inducement in methodical, step-by-step instructions that, when practiced by surgeons, depicts infringement of every single claim of every single patent referenced in this Complaint:

| 1:16/3:56 |  |
| --- | --- |
| 1:21/3:56 | |

| 2:04/3:56 |  |
| 2:06/3:56 | |

| 2:14/3:56 |  |
| 2:24/3:56 | |

| 3:52/3:56 |  |
|---|---|
| | Copyright by SeaSpine Holdings Corporation.  Explaining that "Federal (USA) law restricts this device to sale by or on the order of a licensed physician or practitioner.  ***Refer to the Instructions for Use provided with each product***."  (Emphasis added.) |

58.     SeaSpine specifically and intentionally has designed the SeaSpine Products to be competitive in the market, making use of industry norms in the standard of care such as *en bloc* derotation, and upon information and belief, has and will continue to educate, encourage, direct, train, or otherwise induce the performance of methods and construction of instruments that make use of those norms.

**X.     COUNT I: WILLFUL INFRINGEMENT OF THE '358 PATENT**

59.     Dr. Barry incorporates by reference the preceding paragraphs of this Complaint.

**A.     DAYTONA**

60.     SeaSpine, without license or authorization to do so, induces the infringement of the '358 patent by manufacturing, selling, distributing, loaning, consigning, or otherwise making available the Daytona™ Deformity System and the Daytona® Small Stature Spinal System (collectively, "Daytona System") to surgeons performing spinal derotation procedures resulting in the performance of the methods of at least claim 4 of the '358 patent.

- 13 -

61.     SeaSpine provides instruction, education, or encouragement to surgeons on how to perform spinal derotation procedures using the Daytona System that infringe at least claim 4 of the '358 patent.

62.     For example, SeaSpine has caused surgeons to assemble the Daytona System as described in paragraphs 51, 54, and 58-61.  When assembled as instructed, the Daytona System involves implanting at least two sets of pedicles screws in multiple levels of vertebrae, and using engagement members which act as levers attached to the pedicle screws.  As taught by SeaSpine, a spinal rod is passed through the head portions (or spinal rod conduits) of the implanted pedicle screws, which is then secured by an engagement means.  SeaSpine teaches linking the engagement members one to another across the spine (i.e., transverse the spine).  SeaSpine also teaches linking of engagement members on the same side of the spine (i.e., longitudinal linking). Such longitudinally linked engagement members form a representative "handle means," which is mechanically linked to those engagement members.  With the exception of the screws and rods, the construct described in this paragraph is a representative pedicle screw cluster derotation tool.

63.     SeaSpine teaches the use of such constructs to perform a derotation maneuver of the engaged vertebrae.

64.     SeaSpine provides instruction, education, or encouragement to surgeons on how to use a second pedicle screw cluster derotation tool—with the same components as discussed above—together with a second set of pedicle screws and second spinal rod, to perform a derotation maneuver that involves applying force to the handle means of both tools substantially simultaneously.

65.     On information and belief, the Daytona System has been assembled in the above-described manner, such that when force is applied to the entire construct the force is received simultaneously across the engagement members resulting in the derotation of the vertebrae.

66.     In this manner, SeaSpine induces surgeons to infringe at least claim 4 of the '358 patent when they use the Daytona System.

**B.      WILLFUL INFRINGEMENT OF THE '358 PATENT**

67.     At all times relevant to this cause of action, SeaSpine provided the instruction, education, encouragement, or direction described above to surgeons with the intent of having those surgeons perform the methods of the '358 patent and infringe the claims therein.

68.     SeaSpine knows and at all relevant times has known of its infringement of the '358 patent or at the very least has been willfully blind to its infringement of the '358 patent.

69.     Because SeaSpine knows and at all relevant times has known of its infringement of the '358 patent, or at the very least has been willfully blind to its infringement of the '358 patent, its infringement is deliberate and willful.

70.     Dr. Barry has been and continues to be damaged and irreparably harmed by SeaSpine's infringement of the '358 patent.

71.     Upon information and belief, such infringement has been, and will continue to be, willful, and upon further belief, SeaSpine lacks any reasonable invalidity or non-infringement defenses making this case exceptional and entitling Dr. Barry to increased damages and reasonably attorney's fees pursuant to 35 U.S.C. §§ 284 and 285.

**XI.     COUNT II: WILLFUL INFRINGEMENT OF THE '121 PATENT**

72.     Dr. Barry incorporates by reference the preceding paragraphs of this Complaint.

### A.    DAYTONA

73.    SeaSpine, without license or authorization to do so, induces the infringement of the '121 patent by manufacturing, selling, distributing, loaning, consigning, or otherwise making available the Daytona System to surgeons performing spinal derotation procedures resulting in the assembly of systems that infringe at least claim 2 of the '121 patent.

74.    SeaSpine provides instruction, education, or encouragement to surgeons performing spinal derotation procedures on how to assemble constructs using the Daytona System that infringe at least claim 2 of the '121 patent.

75.    For example, SeaSpine has caused surgeons to assemble the Daytona System as described in paragraphs 51, 54, and 58-61.  SeaSpine provides instruction, education, or encouragement to surgeons on how to assemble the two pedicle screw cluster derotation tools described in those paragraphs with a minimum of three engagement members apiece, and further teaches the cross-linking, or connecting across the spine, of the two pedicle screw cluster derotation tools.  This construct infringes at least claim 2 of the '121 patent.

76.    Upon information and belief, the Daytona System has been assembled in the above-described manner, such that when force is applied to the entire construct the force is received simultaneously across the engagement members resulting in the derotation of the vertebrae.

### B.    WILLFUL INFRINGEMENT OF THE '121 PATENT

77.    At all times relevant to this cause of action, SeaSpine provided the instruction, education, encouragement, or direction described above to surgeons with the intent of having those surgeons construct and use the systems of the '121 patent and infringe the claims therein.

78.    SeaSpine knows and at all relevant times has known of its infringement of the '121 patent or at the very least has been willfully blind to its infringement of the '121 patent.

- 16 -

79.     Because SeaSpine knows and at all relevant times has known of its infringement
of the '121 patent or at the very least has been willfully blind to its infringement of the '121
patent, its infringement is deliberate and willful.

80.     Dr. Barry has been and continues to be damaged and irreparably harmed by
SeaSpine's infringement of the '121 patent.

81.     Upon information and belief, such infringement has been, and will continue to be,
willful and upon further belief SeaSpine lacks any reasonable invalidity or non-infringement
defense making this case exceptional and entitling Dr. Barry to increased damages and
reasonably attorney's fees pursuant to 35 U.S.C. §§ 284 and 285.

## XII.    COUNT III: WILLFUL INFRINGEMENT OF THE '301 PATENT

82.     Dr. Barry incorporates by reference the preceding paragraphs of this Complaint.

### A.     DAYTONA

83.     SeaSpine, without license or authorization to do so, induces the infringement of
the '301 patent by manufacturing, selling, distributing, loaning, consigning, or otherwise making
available the Daytona System to surgeons performing spinal derotation procedures resulting in
the assembly of systems that infringe at least claim 1 of the '301 patent.

84.     SeaSpine provides instruction, education, or encouragement to surgeons
performing spinal derotation procedures on how to assemble constructs using the Daytona
System that infringe at least claim 1 of the '301 patent.

85.     For example, SeaSpine has caused surgeons to assemble the Daytona System as
described in paragraph 51, 54, and 58-61.  SeaSpine provides instruction, education, or
encouragement to surgeons on how to assemble the two pedicle screw cluster derotation tools
shown in, for example, Paragraph 54 with a minimum of three engagement members apiece,
where the engagement members of the two tools are attached to pedicle screws on the same

vertebrae (in other words, and for example, in a three-by-three assembly), and further teaches the cross-linking of the two pedicle screw cluster derotation tools.  This construct infringes at least claim 1 of the '301 patent.

86.    Upon information and belief, the Daytona System has been assembled in the above-described manner, such that when force is applied to the entire construct the force is received simultaneously across the engagement members resulting in the derotation of the vertebrae.

### B.    WILLFUL INFRINGEMENT OF THE '301 PATENT

87.    At all times relevant to this cause of action, SeaSpine provided the instruction, education, encouragement, or direction described above to surgeons with the intent of having those surgeons construct and use the systems of the '301 patent and infringe the claims therein.

88.    SeaSpine knows and at all relevant times has known of its infringement of the '301 patent or at the very least has been willfully blind to its infringement of the '301 patent.

89.    Because SeaSpine knows and at all relevant times has known of its infringement of the '301 patent or at the very least has been willfully blind to its infringement of the '301 patent, its infringement is deliberate and willful.

90.    Dr. Barry has been and continues to be damaged and irreparably harmed by SeaSpine's infringement of the '301 patent.

91.    Upon information and belief, such infringement has been, and will continue to be, willful and upon further belief SeaSpine lacks any reasonable invalidity or non-infringement defense making this case exceptional and entitling Dr. Barry to increased damages and reasonably attorney's fees pursuant to 35 U.S.C. §§ 284 and 285.

### XIII.   COUNT IV: WILLFUL INFRINGEMENT OF THE '787 PATENT

92.    Dr. Barry incorporates by reference the preceding paragraphs of this Complaint.

A. **DAYTONA**

93.     SeaSpine, without license or authorization to do so, induces the infringement of the '787 patent by manufacturing, selling, distributing, loaning, consigning, or otherwise making available the Daytona System to surgeons performing spinal derotation procedures resulting in the performance of the methods of at least claim 6 of the '787 patent.

94.     SeaSpine provides instruction, education, or encouragement to surgeons on how to perform spinal derotation procedures using the Daytona System that infringe at least claim 6 of the '787 patent.

95.     For example, SeaSpine has caused surgeons to assemble the Daytona System as described in paragraphs 51, 54, and 58-61.  When assembled as instructed, the Daytona System involves implanting at least two sets of pedicles screws in two levels of vertebrae, and using elongated levers which act as levers attached to the pedicle screws (in other words, and for example, in a two-by-two construct).  As taught by SeaSpine, a spinal rod is passed through the head portions (or spinal rod conduits) of the implanted pedicle screws, which is then secured by an engagement means.  SeaSpine teaches linking the elongated levers one to another on the same side of the spine, as well as across the spine, such that a single force moves all elongated levers in unison.

96.     SeaSpine teaches the use of such constructs to perform a derotation maneuver of the engaged vertebrae.

97.     On information and belief, the Daytona System has been assembled in the above-described manner, such that when force is applied to the entire construct the force is received simultaneously across the engagement members resulting in the derotation of the vertebrae.

98.     In this manner, SeaSpine induces surgeons to infringe at least claim 6 of the '787 patent when they use the Daytona System.

- 19 -

**B.     WILLFUL INFRINGEMENT OF THE '787 PATENT**

99.     At all times relevant to this cause of action, SeaSpine provided the instruction, education, encouragement, or direction described above to surgeons with the intent of having those surgeons perform the methods of the '787 patent and infringe the claims therein.

100.     SeaSpine knows and at all relevant times has known of its infringement of the '787 patent or at the very least has been willfully blind to its infringement of the '787 patent.

101.     Because SeaSpine knows and at all relevant times has known of its infringement of the '787 patent or at the very least has been willfully blind to its infringement of the '787 patent, its infringement is deliberate and willful.

102.     Dr. Barry has been and continues to be damaged and irreparably harmed by SeaSpine's infringement of the '787 patent.

103.     Upon information and belief, such infringement has been, and will continue to be, willful and upon further belief SeaSpine lacks any reasonable invalidity or non-infringement defense making this case exceptional and entitling Dr. Barry to increased damages and reasonably attorney's fees pursuant to 35 U.S.C. §§ 284 and 285.

**XIV.   COUNT V: WILLFUL INFRINGEMENT OF THE '788 PATENT**

104.     Dr. Barry incorporates by reference the preceding paragraphs of this Complaint.

**A.     DAYTONA**

105.     For the reasons explained in paragraphs 89-94, SeaSpine has induced surgeons to infringe at least claim 1 of the '788 patent through their use of the Daytona System.

**B.     WILLFUL INFRINGEMENT OF THE '788 PATENT**

106.     At all times relevant to this cause of action, SeaSpine provided the instruction, education, encouragement, or direction described above to surgeons with the intent of having those surgeons construct and use the system of the '788 patent and infringe the claims therein.

107.    SeaSpine knows and at all relevant times has known of its infringement of the '788 patent or at the very least has been willfully blind to its infringement of the '788 patent.

108.    Because SeaSpine knows and at all relevant times has known of its infringement of the '788 patent or at the very least has been willfully blind to its infringement of the '788 patent, its infringement is deliberate and willful.

109.    Dr. Barry has been and continues to be damaged and irreparably harmed by SeaSpine's infringement of the '788 patent.

110.    Upon information and belief, such infringement has been, and will continue to be, willful and upon further belief SeaSpine lacks any reasonable invalidity or non-infringement defense making this case exceptional and entitling Dr. Barry to increased damages and reasonably attorney's fees pursuant to 35 U.S.C. §§ 284 and 285.

## XV.    PRAYER FOR RELIEF

WHEREFORE, Dr. Barry requests the following relief:

A. Judgment under 35 U.S.C. § 271 that SeaSpine willfully infringes Dr. Barry's patents referenced and detailed above;

B. Damages under 35 U.S.C. § 284 adequate to compensate Dr. Barry for SeaSpine's willful infringement and continued infringement of Dr. Barry's patents referenced and detailed above;

C. Trebling or other enhancement of the damages pursuant to 35 U.S.C. § 284 as a result of SeaSpine's willful and deliberate acts of infringement;

D. Award pursuant to 35 U.S.C. § 284 of costs and pre- and post-judgment interest on Dr. Barry's compensatory damages; and

E. Award pursuant to 35 U.S.C. § 285 of Dr. Barry's attorneys' fees incurred in this action; and

F. All other relief the Court deems warranted and appropriate.

## XVI. JURY TRIAL REQUEST

111.    Dr. Barry pursuant to the Seventh Amendment of the United States Constitution

requests trial by jury on all issues properly heard by a jury.


                                          HEYMAN ENERIO
                                          GATTUSO & HIRZEL LLP

                                          /s/ *Dominick T. Gattuso*
                                          Dominick T. Gattuso (#3630)
                                          300 Delaware Ave., Suite 200
OF COUNSEL:                               Wilmington, DE 19801
                                          Telephone: (302) 472-7311
KILPATRICK TOWNSEND &                     dgattuso@hegh.law
STOCKTON LLP
D. Clay Holloway                          *Attorneys for Plaintiff Dr. Mark A. Barry*
Mitchell G. Courtney
1100 Peachtree Street NE, Suite 2800
Atlanta, GA  30309-4528
Telephone:  404 815 6500
cholloway@kilpatricktownsend.com
mcourtney@kilpatricktownsend.com

Dario A. Machleidt
Kathleen R. Geyer
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
Telephone: 206-467-9600
DMachleidt@kilpatricktownsend.com
KGeyer@kilpatricktownsend.com

Taylor J. Pfingst
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
TPfingst@kilpatricktownsend.com

Andrew W. Rinehart
1001 West Fourth Street
Winston-Salem, NC 27101
ARinehart@kilpatricktownsend.com


Dated:  June 2, 2021