IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DR. MARK A. BARRY,

                     Plaintiff,

       v.

SEASPINE HOLDINGS CORP., SEASPINE
ORTHOPEDICS CORP., and SEASPINE,
INC.,

                     Defendants.

Civil Action No. 21-806-RGA

<u>MEMORANDUM OPINION</u>

Dominick T. Gattuso, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, DE; D.
Clay Holloway, Mitchell G. Stockwell, Courtney S. Dabbiere, KILPATRICK TOWNSEND &
STOCKTON LLP, Atlanta, GA; Dario A. Machleidt, Kathleen R. Geyer, KILPATRICK
TOWNSEND & STOCKTON LLP, Seattle, WA; Taylor J. Pfingst, KILPATRICK
TOWNSEND & STOCKTON LLP, San Francisco, CA; Andrew W. Rinehart, KILPATRICK
TOWNSEND & STOCKTON LLP, Winston-Salem, NC,

      Attorneys for Plaintiff.

Brian P. Egan, Andrew M. Moshos, MORRIS, NICHOLS, ARSHT & TUNNELL LLP,
Wilmington, DE; Chad T. Nitta, Jason S. Jackson, Heather N. Tilley, KUTAK ROCK LLP,
Denver, CO,

      Attorneys for Defendants.

January 26, 2022

/s/ Richard G. Andrews
**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is Defendants' Partial Motion to Dismiss.   (D.I. 9).   I have considered the

parties' briefing.   (D.I. 10, 12, 13).   For the reasons that follow, I will DENY the motion.

## I.   BACKGROUND

Plaintiff Dr. Mark A. Barry filed a complaint for patent infringement against Defendants

SeaSpine Holdings Corp., SeaSpine Orthopedics Corp., and SeaSpine, Inc. (together,

"SeaSpine").   (D.I. 1).   In Count IV of the complaint, Dr. Barry asserts that SeaSpine's Daytona

System induces infringement of at least claim 6 of U.S. Patent No. 9,668,787 ("the '787 patent").

(*Id.* at ¶ 92).   SeaSpine filed a partial motion to dismiss Count IV for failure to state a claim

under Rule 12(b)(6), arguing that claim 6 does not contain patent eligible subject matter under §

101.   (D.I. 9).

The '787 patent is entitled "System and Method for Aligning Vertebrae in the

Amelioration of Aberrant Spinal Column Deviation Conditions."   It generally relates to systems

and methods for correcting spinal deformities, including scoliosis.   ('787 patent, 1:29–31).

Claim 6 of the '787 patent recites:

6.     A method of applying a manipulative force to a target region of a spinal column
during a surgical procedure, the method comprising:

implanting a first pedicle screw into a first pedicle of a first vertebra;

implanting a second pedicle screw into a second pedicle of the first vertebra;

implanting a third pedicle screw into a first pedicle of a second vertebra;

implanting a fourth pedicle screw into a second pedicle of the second vertebra;

temporarily engaging a first elongated lever with the first pedicle screw;

temporarily engaging a second elongated lever with the second pedicle screw;

1

temporarily engaging a third elongated lever with the third pedicle screw;

temporarily engaging a fourth elongated lever with the fourth pedicle screw;

linking together the first, second, third and fourth elongated levers in both a craniocaudal direction and a transverse direction such that the first, second, third and fourth elongated levers move together in unison;

moving the linked together first, second, third and fourth elongated levers in unison to simultaneously rotate the first and the second vertebrae through the pedicle screws about a craniocaudal roll axis; and

disengaging the first, second, third and fourth elongated levers from their respective pedicle screws before concluding the surgical procedure,

installing a spinal rod that extends in a craniocaudal direction between at least the first pedicle screw and the third pedicle screw; and

between the moving and disengaging steps, tightening spinal rod engagement mechanisms on the first and third pedicle screws to secure the spinal rod to the first and third pedicle screws.

(*Id.*, 8:14–50).

## II.   LEGAL STANDARDS

### A.  Rule 12(b)(6) Motion to Dismiss

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).   Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard.   A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

### B.  Patent-Eligible Subject Matter

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court recognizes three categories of subject matter that are not eligible for patents—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). The purpose of these exceptions is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 71 (2012).

In *Alice*, the Supreme Court reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217. First,

3

the court must determine whether the claims are drawn to a patent-ineligible concept.   *Id.*   If the answer is yes, the court must look to "the elements of the claim both individually and as an ordered combination" to see if there is an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."   *Id.* at 217–18 (cleaned up).

Patentability under 35 U.S.C. § 101 is a threshold legal issue.   *Bilski v. Kappos*, 561 U.S. 593, 602 (2010).   Accordingly, the § 101 inquiry is properly raised at the pleading stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter.   *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 2621 (2018)*.*   This is, however, appropriate "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law."   *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

## III.   DISCUSSION

First, I must determine whether claim 6 as a whole is directed to an abstract idea.   *Alice*, 573 U.S. at 218.   "The 'abstract ideas' category embodies 'the longstanding rule that an idea of itself is not patentable.'"   *Id.* (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).   "The Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of the *Mayo*/*Alice* inquiry."   *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).   The Supreme Court has recognized, however, that "fundamental economic practice[s]," *Bilski*, 561 U.S. at 611, "method[s] of organizing human activity," *Alice*, 573 U.S. at 220, and mathematical algorithms, *Benson*, 409 U.S. at 64, are abstract ideas.   In navigating the

4

parameters of such categories, courts have generally sought to "compare claims at issue
to those claims already found to be directed to an abstract idea in previous cases."
*Enfish*, 822 F.3d at 1334.

"[T]o avoid ineligibility, a claim must 'have the specificity required to transform
the claim from one claiming only a result to one claiming a way of achieving it.'" *Am.
Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1296 (Fed. Cir. 2020)
(quoting *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018)) (cleaned
up), *petition for cert. filed*, No. 20-891 (Dec. 28, 2020).   "[T]he claim itself . . . must go
beyond stating a functional result; it must identify 'how' that functional result is achieved
by limiting the claim scope to structures specified at some level of concreteness, in the
case of a product claim, or to concrete action, in the case of a method claim."  *Id.* at
1302.

SeaSpine argues that claim 6 is directed to the abstract idea of "rotating two or
more vertebrae at the same time," also known as "*en bloc* derotation."   (D.I. 10 at 1).   I
am not convinced that "*en bloc* derotation" is an abstract idea as it is a concrete surgical
procedure, not a mental process or mathematical algorithm.   The cases cited by SeaSpine
do not convince me otherwise as these cases are not closely analogous to the claim here.
*See, e.g.*, *Yu v. Apple*, 1 F.4th 1040, 1043 (Fed. Cir. 2021) (directed to the abstract idea of
using one picture to enhance the other picture); *American Axle*, 967 F.3d at 1298
(directed to a natural law); *ChargePoint, Inc. v. Sema Connect, Inc.*, 920 F.3d 759, 770
(Fed. Cir. 2019) (directed to the abstract idea of communicating over a network for
device interaction).

SeaSpine instead argues that claim 6 is directed to an abstract idea because it impermissibly recites the result of *en bloc* derotation, rather than how to achieve this result.   (D.I. 10 at 8–9).   Dr. Barry responds that claim 6 is directed to "a specific configuration used for *en bloc* derotation, including using two derotators on each of at least two vertebrae and linking the derotators both along and across the spine."   (D.I. 12 at 1).

SeaSpine compares claim 6 to the claims at issue in *American Axle & Manufacturing, Inc. v. Neapco Holdings LLC*.   The patent at issue in *American Axle* claimed "a method of manufacturing a driveline propshaft containing a liner designed such that its frequencies attenuate two modes of vibration simultaneously and . . . a manufacturing method to tuning liners to attenuate bending mode vibration."   *American Axle*, 967 F.3d at 1292–93.   The Federal Circuit held that the patent was ineligible under § 101 because it was directed to the use of a natural law (Hooke's law).   *Id.* at 1298. The Court reasoned that the claims at issue simply claimed the desired result of tuning a liner such that it attenuates two different vibration modes, "by whatever structures or steps happen to work."   *Id.* at 1295.   The claims failed to include "any physical structure or steps for achieving the claimed result."   *Id.*   SeaSpine argues that claim 6 similarly only recites the desired result of *en bloc* derotation.   (D.I. 10 at 10–11).

I find SeaSpine's reliance on *American Axle* unpersuasive.   The claim at issue in *American Axle* simply recited "tuning a mass and a stiffness of at least one liner."   (U.S. Patent No. 7,774,911, claim 22).   Claim 6 of the '787 patent does not simply recite "rotating two or more vertebrae at the same time."   Instead, claim 6 discloses how to achieve this result.   Specifically, claim 6 recites the steps of (1) implanting two pedicle

6

screws on each of at least two vertebrae; (2) temporarily engaging elongated levers with each pedicle screw; (3) linking together the four elongated levers along and across the spine such that the levers move together in unison; and (4) moving the linked elongated levers in unison to simultaneously rotate the first and second vertebrae through the pedicle screws about a craniocaudal roll axis.   (’787 patent, 8:14–40).   Unlike the claim in *American Axle*, claim 6 recites a specific configuration of surgical tools and steps for achieving the claimed result.[1]

Finally, SeaSpine argues that claim 6 of the ’787 patent preempts all methods of performing *en bloc* derotation.   (D.I. 10 at 20).   But, as I concluded above, claim 6 is limited to a particular configuration for performing *en bloc* derotation.   Whether this claimed configuration is in fact the only way to perform *en bloc* derotation is not something I can decide on a motion to dismiss.

In sum, I conclude that claim 6 is not directed to an abstract idea.   Accordingly, I need not reach *Alice* Step Two.   SeaSpine's motion to dismiss Count IV is denied.

## IV.   CONCLUSION

An appropriate order will issue.

---

[1]  SeaSpine argues that the claimed steps are too general.   (D.I. 10 at 8–10).   For example, one limitation requires "moving the linked together first, second, third and fourth elongated levers in unison to simultaneously rotate the first and the second vertebrae through the pedicle screws about a craniocaudal roll axis."   (’787 patent, 8:37–40).   SeaSpine argues that this claim limitation fails to explain how much force the surgeon should apply to rotate the vertebrae; ergo, it is directed to a result.   (D.I. 10 at 10).   I do not think this is a reasonable argument to make, on a motion to dismiss, in support of a conclusion of abstractness.   Section 101 does not require that claims go into such a level of detail.   Enablement might require more, and perhaps SeaSpine will make a similar enablement argument (although I would be surprised if it turns out spinal surgeons did not understand how much force to apply).   *See American Axle*, 967 F.3d at 1302 (discussing the "how" requirements of § 101 and enablement).   But, for § 101 purposes, I conclude that claim 6 has sufficiently recited steps for performing *en bloc* derotation.

8